**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| GUARDIAN FLIGHT LLC, REACH AIR MEDICAL SERVICES LLC, CALSTAR AIR MEDICAL SERVICES LLC, MED-TRANS CORPORATION, AIR EVAC EMS, INC., and AIRMED INTERNATIONAL LLC, *Plaintiffs*, vs. AETNA LIFE INSURANCE COMPANY, AETNA HEALTH, INC., AETNA HEALTH AND LIFE INSURANCE COMPANY, and CIGNA HEALTH AND LIFE INSURANCE COMPANY, *Defendants*. | No. 3:24-cv-00680-MPS |

**RULING ON MOTION TO DISMISS COUNTERCLAIMS**

After being sued by six "air ambulance" companies for allegedly failing to pay Independent Dispute Resolution ("IDR") awards, Defendants Aetna Life Insurance Company, Aetna Health Inc., and Aetna Health and Life Insurance Company (collectively, "Aetna") now bring counterclaims against the air ambulance companies. Aetna alleges that these companies—Guardian Flight LLC, Reach Air Medical Services LLC, CALSTAR Air Medical Services LLC, Med-Trans Corporation, Air Evac EMS, Inc., and AirMed International LLC (collectively, "the Air Ambulance Companies")—have manipulated the IDR process by submitting ineligible or "bifurcated" claims and materially misrepresenting the nature and quality of their services to IDR entities. Aetna brings counterclaims alleging fraudulent misrepresentation, money had and received, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, *et seq*. The Air Ambulance Companies have moved to dismiss the counterclaims under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, I GRANT their motion.

1

## I.    BACKGROUND

I incorporate by reference the factual and procedural background set forth in the ruling on Aetna's and Cigna's motion to dismiss. *See* ECF No. 264 at 5-8. I also assume familiarity with the No Surprises Act ("NSA"), including its purposes and general operation. *See id.* at 2-4. The facts below are drawn from Aetna's amended counterclaims, ECF No. 291, and are accepted as true for the purposes of this ruling.

### A.  Factual Background

The Airline Deregulation Act of 1978 "prohibits states from regulating the price, route, or service of an air carrier, such as [the Air Ambulance Companies]." *Id.* ¶ 14. "The unintended consequence of the ADA's passage was that air ambulance companies . . . charged exorbitant prices to hospitals, patients, and insurers that . . . far outweighed the costs incurred by [them]." *Id.* "[A]ir ambulance companies . . . would prey on vulnerable patients in urgent need of emergency services, only to blind-side them with astronomical medical bills." *Id.* ¶ 15. "Though many payors sought to bring these providers in-network to protect patients and rein in costs, such negotiations routinely failed due to providers' refusal to moderate their inflated pricing demands." *Id*. "In order to protect patients from financial devastation, payors were frequently pressured into paying excessive and unjustified charges." *Id.* ¶ 17.

"Recognizing this national crisis, the United States Congress enacted the [NSA] . . . to curb the abuse of surprise billing practices, particularly by air ambulance providers who weaponized the ADA's preemption to avoid meaningful oversight." *Id.* ¶ 18. "'[T]he NSA protects patients from surprise bills incurred when they receive emergency services from out-of-network providers by, *inter alia*, relieving patients from liability and creating an [IDR] process for resolving billing

disputes between providers and insurers.'" *Id.* (quoting *Guardian Flight, L.L.C. v. Med. Evaluators of Tex. ASO, L.L.C.*, 140 F.4th 613, 617-18 (5th Cir. 2025)).

"Unable to continue exploiting patients directly through surprise billing as a result of the NSA, [the Air Ambulance Companies] . . . engineered a second scheme, this time manipulating the IDR process itself to continue inflating payments and driving profits." *Id.* ¶ 19. "In this new scheme, [the Air Ambulance Companies] devised a series of tactics, including but not limited to, overwhelming the IDR system, misrepresenting service data, misrepresenting the nature and value of the services provided, and improperly extracting payments from payors all to perpetuate their profit-maximizing model." *Id.* The particulars of this alleged scheme are set forth below.

i.  *Ineligible Claims*

"The IDR process is only available for a 'qualified IDR item or service,'" and to be "qualified," an item or service must meet certain conditions. *Id.* ¶ 22 (citing 42 U.S.C. § 300gg-111(c)(1)). "When initiating the IDR process, providers must submit '[a]n attestation that the items and services under dispute are qualified IDR items or services' within the scope of the IDR process." *Id.* ¶ 23 (citing 45 C.F.R. § 149.510(b)(2)(iii)(A)(6)). The Air Ambulance Companies "have submitted hundreds of disputes that were entirely ineligible for the IDR process." *Id.* ¶ 24. "Until recently, at least 16% of the claims that [they] submitted to the IDR process were ineligible," and such claims "had the dual effect of overwhelming the IDR system and allowing [the Air Ambulance Companies] to fraudulently secure improper IDR payments from Aetna." *Id.* "Moreover, when ineligible claims are identified following an IDR award, Aetna must then undertake administrative burden and cost to effectively appeal any award." *Id.* ¶ 26.

## ii.    Bifurcated Claims

The Air Ambulance Companies "have [also] regularly increased the volume of IDR claims by submitting two separate disputes under the [ ] IDR process for what is a single, bundled claim for a transport encompassing both the base rate and mileage rate." *Id.* ¶ 29. "Each separate IDR submission imposes two layers of cost: (1) a non-refundable administrative fee, payable by both parties, and (2) an IDR entity fee, which the losing party is obligated to pay." *Id.* ¶ 31. Moreover, "[s]eparate submissions fail to provide IDR entities with the complete picture of offers being submitted relative to costs that may have already been paid on the transport." *Id.* ¶ 30. "This unbundling scheme": 1) "[i]ncreas[es] the probability of success by isolating components of the claim;" 2) "[a]mplif[ies] administrative and financial burdens on Aetna and other payors;" 3) "[o]verwhelm[s] the IDR system to induce delay and dysfunction; and" 4) "[c]oerc[es] Aetna into contractual agreements by rendering the current reimbursement structure untenable . . . ." *Id.* ¶ 32.

## iii.    Material Misrepresentations

Finally, the Air Ambulance Companies "make knowing material misrepresentations and false statements concerning the nature, quality, and value of their equipment and services provided in an effort to inflate the IDR valuation awards." *Id.* ¶ 33. "Examples of such false statements and misrepresentations include, but are not limited to": 1) "[c]laiming to operate 'state of the art aircraft,' when in fact they are operating older, lowest cost aircraft;" 2) "[o]verstating the minimum qualifications and experience of the pilots that operate the aircraft, including the minimum number of pilot flight hours required for eligibility;" 3) "[i]nflating the claimed percentage of air ambulances under commercial contracts with payors; and" 4) "[m]aking false representations and/or withholding information concerning the safety record of the air ambulances, pilots, and crew members." *Id.* "Such false representations . . . lead to artificially inflated IDR valuations,

4

resulting in higher awards collected from Aetna for [the Air Ambulance Companies'] services, and furthering [the Air Ambulance Companies'] effort to coerce Aetna into entering contractual agreements." *Id.* ¶ 34.

Based on these factual allegations, Aetna claims that the Air Ambulance Companies made fraudulent misrepresentations and violated CUPTA; they also assert a claim for "money had and received."

### B. Procedural History

After the Air Ambulance Companies moved to dismiss Aetna's initial counterclaims, *see* ECF No. 283, I provided Aetna with an opportunity to amend. ECF No. 284. Aetna has now filed amended counterclaims, ECF No. 291, and the Air Ambulance Companies have again moved to dismiss. ECF No. 294.

### II.    LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I accept as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and "draw all reasonable inferences in favor of the nonmoving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," however, "do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

### III.    DISCUSSION

In seeking dismissal, the Air Ambulance Companies argue: 1) that "federal law preempts Aetna's claims," ECF No. 294 at 3; 2) that "choice of law principles bar Aetna's Connecticut law claims," *id.* at 11; 3) that "CUPTA does not apply" to them, *id.* at 14; 4) that "Aetna has failed to state a claim," *id.* at 19; and 5) that "Aetna's Declaratory Judgment Act and injunctive relief claims are improper." [1] *Id.* at 34. I agree that Aetna's counterclaims are preempted under the NSA or are otherwise excepted from CUPTA's application and decline to address the other arguments.

### A.  Preemption by the NSA

The Air Ambulance Companies argue that the "NSA preempts state law challenges to IDR awards or the process that resulted in them." ECF No. 294 at 5. While preemption is an affirmative defense, such a defense "may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).[2] The Air Ambulance Companies claim that the NSA provides the sole basis for judicial review of an IDR determination, *see* ECF No. 294 at 5, and that "Congress's express decision [was] to delegate to the Departments [of HHS, Labor, and Treasury] the authority to determine the rules, regulations, and guidance on the IDR process under the NSA." *Id.* at 7. Aetna's counterclaims, they say, "seek to upend the NSA by challenging what occurred during the IDR process . . . without asserting a basis for judicial review under the NSA itself." *Id.* at 6.

---

[1] While Aetna brings a counterclaim for "declaratory and injunctive relief," *see* ECF No. 291 at 17-18 (Count Three), such a counterclaim is better characterized as a prayer for relief rather than an independent cause of action. *See also* ECF No. 291 at 19 (Aetna's prayer for relief asking the Court, in part,  to "[p]ermanently enjoin the [Air Ambulance Companies] from submitting unqualified IDR items and/or services to IDR and otherwise initiating improper IDR arbitrations against Aetna" and "[d]eclare that IDR awards [the Air Ambulance Companies] obtain against Aetna on ineligible IDR items or services are non-binding and are not payable on a go-forward basis").

[2] Aetna does not contest the procedural propriety of litigating preemption on a Rule 12(b)(6) motion. While Aetna does argue that the Air Ambulance Companies have added "new alleged facts" in their brief (ECF No. 300 at 2), I have not relied on the "new alleged facts" in this ruling.

I find that Aetna's counterclaims would undermine the restriction on judicial review in the NSA and is therefore barred by conflict preemption. "Conflict preemption . . . refers to situations where compliance with both state and federal law is a physical impossibility, or . . . where the state law at issue stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Marentette v. Abbott Lab'ys, Inc.*, 886 F.3d 112, 117 (2d Cir. 2018) (internal quotations omitted). To be sure, to the extent that the counterclaims seek to impose penalties on the Air Ambulances Companies for alleged fraud, that wouldn't conflict with the NSA's goals. I previously held that imposing state law penalties for a failure to timely pay IDR awards "would not create any obstacles to the NSA's purposes and objectives, as untimely payments are already proscribed by the NSA." *Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214, 236 (D. Conn. 2025). The same logic would apply to state law penalties predicated on alleged fraudulent conduct, as such conduct is similarly proscribed. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I) ("A determination of a certified IDR entity . . . shall be binding upon the parties involved, *in the absence of a fraudulent claim or evidence of misrepresentation of facts* presented to the IDR entity involved regarding such claim.") (emphasis added). Like the penalties associated with untimely IDR payments, such penalties would support rather than undermine Congress's objectives insofar as they "could help to ensure that parties . . . refrain from engaging in unfair practices to circumvent [the NSA's] provisions."[3] *Guardian Flight LLC*, 789 F. Supp. 3d at 236.

---

[3]The Air Ambulance Companies disagree. They argue that Congress "delegate[d] to the Departments the authority to determine the rules, regulations, and guidance on the IDR process," and that Aetna is using state law to challenge those rules and thereby undermine the Departments' authority. *See* ECF No. 294 at 6; *id.* at 7-8 ("Aetna . . . seeks to use state law to challenge the Departments' rules . . . the IDR proceedings that led to the awards . . . the Departments' requirement that insurers bear their own costs and participate in the eligibility determination process . . . and the IDR attestation used to initiate disputes."). This is not a fair characterization of Aetna's counterclaims. Aetna is challenging alleged *abuse* of the IDR framework, rather than the rules, procedures, and requirements themselves. As discussed above, the alleged fraudulent attestations and misrepresentations at issue are already prohibited by the NSA, insofar as they render an IDR determination nonbinding. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I). As to Aetna's counterclaims regarding the alleged "bifurcation" of disputes, I find that such counterclaims fail for other reasons. *See* Discussion *infra* Section III.B.

Although these counterclaims are consistent with the NSA's rejection of awards derived by fraud, the statute specifies an exclusive procedure to challenge such awards, and allowing Aetna to bring these counterclaims would conflict with that exclusive procedure. 42 U.S.C. Section 300gg-111(c)(5)(E)(i) states in part, "A determination of a certified IDR entity . . . shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of title 9." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). "[S]ection 10(a) of title 9" forms part of the FAA, which in "paragraphs (1) through (4)" provide grounds for vacating an arbitral award— including "where the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1). The Air Ambulance Companies argue that "nothing in [Section 300gg-111(c)(5)(E)(i)] authorizes *state-law* actions for fraud and misrepresentation" and that "[v]acatur is the sole means for judicial review of IDR awards and the process that led to them." ECF No. 301 at 2–3 (emphasis in original). I agree.

While the text of Section 300gg-111(c)(5)(E)(i)(II) limits judicial review to "case[s] described" in paragraphs (1) through (4) of Section 10 of the FAA and does not expressly limit judicial review to actions for vacatur, the weight of authority favors that interpretation. *See Richard Agag, MD, Plaintiff, v. Cigna Health & Life Ins. Co., Defendant.*, No. 3:25-cv-00498 (SRU), 2026 WL 1021213, at *15 (D. Conn. Apr. 15, 2026) ("Judicial review of an NSA IDR award is *only* permissible when a party moves to vacate an award under the grounds outlined in paragraphs (1) through (4) of Section 10(a) of the FAA.") (emphasis in original) (citing 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II)); *Avraham Plastic Surgery LLC v. Aetna, Inc.*, No. 25-cv-784, 2025 WL 3779084, at *2 (E.D.N.Y. Dec. 30, 2025) *report and recommendation adopted*, No. 25-cv-784 (E.D.N.Y. Jan. 20, 2026) ("Under the NSA, the [IDR entity]'s determinations are binding on the parties and are not subject to judicial review, except that a party may file a petition seeking vacatur

8

of an IDR award under the limited circumstances listed in § 10(a)(1–4) of the Federal Arbitration Act . . . .); *PHI Health, LLC v. Optimum Choice, Inc.*, No. 25-cv-2320, 2026 WL 850453, at *11 n.12 (D. Md. Mar. 27, 2026) ("Congress did not authorize any 'appeal' from an IDR determination; rather, it limited parties with disputes about IDR determinations to seek judicial orders vacating such determinations.") (citing 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II)).

Aetna does not contest the meaning of the NSA's judicial review restriction but rather its application. Aetna argues that "[v]acatur under the FAA is a remedy for 'bad faith' during a *particular* arbitration proceeding," and here "Aetna's state-law claims seek recovery for [the Air Ambulance Companies]' *systemic* misconduct, obscured within thousands of IDR proceedings." ECF No. 300 at 6-7 (emphasis in original). To find any merit in this argument would be to permit a workaround to the barrier to plenary judicial review Congress imposed. It would allow payors or providers to simply consolidate multiple adverse determinations and obtain plenary review of those determinations by presenting their claim as one challenging "systemic" misconduct. Aetna's focus on the above distinction obscures the real issue; regardless of whether its state-law counterclaims involve a single IDR determination or many, if adjudicating those counterclaims would have the effect of subjecting the adverse IDR determinations to judicial review other than in the confined manner specified in Section 10(a) of the FAA, the counterclaims are unreviewable under the NSA and must be dismissed.

Most of Aetna's counterclaims would require judicial review of multiple IDR determinations because the alleged fraudulent and abusive conduct is inextricably tied to those determinations. *See* ECF No. 291 ¶¶ 39, 43 (fraudulent misrepresentation: alleging that the Air Ambulance Companies knowingly submitted false attestations and representations "to extract money" and obtain "inflated payments"); *id.* ¶ 62 (money had and received: alleging that the Air

Ambulance Companies "benefitted from the receipt and retention of [ ] monies . . . paid as a result of IDR determinations made on the basis of . . . mistaken submissions and representations"); *id.* ¶ 53 (CUTPA: alleging, in part, that the Air Ambulance Companies' "false attestations" and representations caused Aetna to suffer "ascertainable losses of money . . . including payment of IDR determinations for ineligible claims[ ] [and] payment of IDR determinations that were based on misrepresentation"). Indeed, at least as to the allegations of fraudulent misrepresentation, Aetna only has standing insofar as this alleged conduct "inflated IDR dispute awards," ECF No. 291 ¶ 37, and therefore caused injury. Because of the clear causal nexus between the alleged conduct and the awards, to rule that the conduct was illegal would be to rule as to the merits of those awards and therefore engage in judicial review.[4] *See Richard Agag, MD*, 2026 WL 1021213, at *11 (concluding that "judicial review" under the NSA involves considering the merits of an IDR award). But such review is limited to motions for vacatur. Accordingly, Aetna's fraudulent misrepresentation counterclaim, its counterclaim for money had and received, and a portion of its CUTPA counterclaim must be dismissed.[5]

Aetna argues that my earlier decision denying its own motion to dismiss the Air Ambulance Companies' claims, which held that the NSA's binding language contemplates the enforcement of IDR awards in a private action, means that I must also deny the Air Ambulance Companies' motion

---

[4] Even if otherwise framed as a challenge to the Air Ambulance Companies' "systemic" practices, Aetna's allegations leave little doubt that it is also seeking to challenge the propriety of individual IDR determinations. For instance, Aetna points to alleged false statements made in 24 separate IDR disputes and references those disputes by submission number. ECF No. 291 ¶ 44(a)-(x).

[5] This is not to suggest that Aetna cannot *defend* itself on the basis of this alleged misconduct. As Aetna points out, "an IDR decision is not binding when the underlying claim is fraudulent or there is evidence of misrepresentation of facts presented to the IDR entity." ECF No. 300 at 5 (citing 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I) ("A determination of a certified IDR entity . . . shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim . . . .")). But it does suggest, contrary to Aetna's position, that Aetna is not "entitled to recover money" it paid for fraudulent, nonbinding awards but is instead limited to seeking vacatur. *See id.* at 5.

to dismiss their counterclaims. But as I pointed out in that ruling, there is a distinction between enforcing a ruling made by an IDR entity and reviewing it. *Guardian Flight LLC*, 789 F. Supp. 3d at 227–28. My earlier ruling, which was based on the way the issue was framed in the parties' briefs, *see* ECF No. 295, found only that the Air Ambulance Companies could enforce in court awards they had already won, in part because such enforcement did not entail review of the awards and so did not run afoul of the NSA's restriction on judicial review in Section 300gg-111(c)(5)(E)(i)(II). Aetna's counterclaims, by contrast, would thrust the Court into reviewing the substance of a wide swath of IDR awards, which was plainly prohibited by Congress. So my earlier ruling does not help Aetna here.

### B. "Bifurcated" Claims

Not all of Aetna's state-law counterclaims would entail judicial review of an IDR determination. Aetna alleges that the Air Ambulance Companies "have regularly increased the volume of IDR claims by submitting two separate disputes under the NSA's IDR process for what is a single, bundled claim for a transport encompassing both the base rate and the mileage rate." ECF No. 291 ¶ 29. This conduct, according to Aetna, violates CUTPA insofar as it seeks to "overwhelm[ ] the IDR process," "coerce Aetna . . . into direct contractual agreements" with the Air Ambulance Companies, and increase the "costs and administrative burden" associated with addressing this "volume of IDR disputes." *Id.* ¶¶ 53, 55. I could address this counterclaim without engaging in judicial review of an IDR determination; deciding whether these "bifurcated" claims caused delay in the IDR process or duplicative administrative fees would not involve scrutinizing the merits of any award.

The Air Ambulance Companies argue, however, that the challenged practice is exempted from CUTPA itself. ECF No. 294 at 17. They point to Conn. Gen. Stat. Section 42-110c—

CUTPA's "exceptions" provision. That provision states, in part, "Nothing in this chapter shall apply to . . . [t]ransactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States." Conn. Gen. Stat. § 42-110c(a). When determining whether an exception under Section 42-110c exists, "courts focus on the broader pattern of activity by the defendant, not the specific allegations of misconduct." *Sterling v. Securus Techs., Inc.*, No. 3:18-cv-1310 (VAB), 2019 WL 3387043, at *7 (D. Conn. July 26, 2019) (internal quotations omitted). Moreover, the exemption "does not require that the activity at issue be 'specifically directed' or 'required' but only [requires] that the actions be permitted and be subject to regulation by a regulatory board or officer." *Garcia v. Fry*, 186 F. Supp. 3d 228, 234 (D. Conn. 2016) (alterations in original).

Here, while the allegations of misconduct concern "a deliberate and calculated strategy" to "unbundle" IDR submissions and "flood the system," ECF No. 300 at 27, the Air Ambulance Companies argue that the "submission of a payment dispute for each service code (base and mileage) is the 'transaction or action[ ]' at issue." ECF No. 294 at 19. I find that the case law supports defining the activity more broadly. *See Connelly v. Hous. Auth. of City of New Haven*. 213 Conn. 354, 361 (1990) (holding that, in a case involving allegations that a housing authority failed to "provide adequate and stable heat and hot water to tenants," the activity at issue was the "continued leasing or renting of subsidized apartments to low-income tenants"). I therefore define the activity as "the submission of bifurcated claims" rather than the submission of base rate and mileage rate claims, in particular.

When defined in this manner, the activity at issue—submitting bifurcating claims—is plainly permitted by the NSA and subject to regulatory oversight by "an officer of the United States." The Air Ambulance Companies point to Section 300gg-111(c)(3)(A) of the NSA, ECF

No. 294 at 18, which states that "[u]nder the IDR process, the Secretary shall specify criteria under which multiple qualified IDR dispute items and services are permitted to be considered jointly as part of a single determination by an entity for the purposes of encouraging the efficiency . . . of the IDR process." 42 U.S.C. § 300gg111(c)(3)(A). They also argue that "[t]hree federal agencies . . . have created rules for the federal IDR program and plainly allow an IDR proceeding for each line-item payment dispute." ECF No. 294 at 18. I agree. The three officers charged with administering the NSA—the Secretaries of Health and Human Services, Treasury, and Labor—have promulgated rules that (1) clarify when a provider "may" submit and an IDR entity "may" consider items and services jointly, *see* 45 C.F.R. § 149.510(c)(3)(i) (Department of Health and Human Services); 26 C.F.R. § 54.9816-8T(c)(3)(i) (Department of Treasury); 29 C.F.R. § 2590.716-8(c)(3)(i) (Department of Labor), and (2) define a "qualified IDR item or service." *See* 45 C.F.R. § 149.510(a)(2)(xi); 26 C.F.R. § 54.9816-8T(a)(2)(xi); 29 C.F.R. § 2590.716-8(a)(2)(xi). By specifying the circumstances when a provider or IDR entity may "batch" services into a single claim, the NSA and accompanying regulations imply that bifurcation of those services into distinct claims is the default and is therefore permitted; indeed, unless the specified circumstances are satisfied, the language of these regulations suggests that "bifurcation"—or submission of separate items and services individually—is required.

Aetna argues that "there is no legitimate basis to claim this *pattern* of behavior is 'regulated' so as to exempt it from CUTPA," that "[the Air Ambulance Companies] cite no statute, regulation or oversight body that authorizes the specific pattern of conduct at issue," and that "[n]o regulatory body would sanction [the Air Ambulance Companies]' abuse of process, let alone preempt CUTPA's application to it." ECF No. 300 at 27 (emphasis in original). Rather, according to Aetna, this conduct "is exactly the kind of unfair and deceptive business practice that CUTPA

was designed to prevent." ECF No. 300 at 27-28. As previously discussed, the inquiry focuses on the permissibility of the Air Ambulance Companies' "broader pattern of activity," not on "the specific allegations of misconduct." *Garcia*, 186 F. Supp. 3d at 234. And here that "broad pattern" is the submission of bifurcated claims, which the NSA allows, as shown. Aetna also appears to suggest that CUTPA's exception does not apply to unfair and deceptive business practices. But that is the *only* conduct to which the exception would apply, and to accept Aetna's argument would be to effectively nullify CUTPA's exception provision altogether. *See Pintavalle v. Valkanos*, 216 Conn. 412, 418 (1990) ("A statute should be read as a whole and interpreted so as to give effect to all of its provisions.").

Because the Air Ambulance Companies have provided the relevant statutory authority that resolves this issue, they have met their burden. *See* Conn. Gen. Stat. § 42-110c(b) ("The burden of proving exemption . . . shall be upon the person claiming the exemption."). The NSA, as administered by the Secretaries, permits the bifurcation of claims and Aetna's bifurcation allegations are, accordingly, exempted from CUTPA scrutiny.

## IV.    CONCLUSION

For the reasons stated above, I GRANT the Air Ambulance Companies' motion to dismiss (ECF No. 294) and DISMISS Aetna's counterclaims.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
June 16, 2026

14